UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

GFI America, Inc., and
Federal Beef Processors, Inc.,

Civ. File No. 01-798 (PAM/JGL)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

Marshal Chernin, Adam
Chernin, James Mitchell, and
Central Beef,

Defendants.

---

This matter is before the Court on Defendants' various Motions to Dismiss and Motions for More Definite Statement. For the reasons that follow the Court will grant in part and deny in part the Motions to Dismiss, and deny the Motions for More Definite Statement.

**BACKGROUND**

Plaintiffs in this case are GFI America, Inc. ("GFI") and Federal Beef Processors, Inc. ("Federal Beef"). Federal Beef is a wholly-owned subsidiary of GFI. Both GFI and Federal Beef buy, process, and resell beef. The individual defendants, Marshall Chernin, Adam Chernin, and James Mitchell, were all employed by Federal Beef. Marshall Chernin was general manager of Federal Beef. James Mitchell was general manager of Federal Beef's plant in Rapid City, South Dakota. Adam Chernin was employed as a manager at Federal Beef in Minneapolis. The three individual defendants subsequently left Federal Beef and now work for Central Beef, a competitor of Federal Beef.

FILED SEP 20 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

The Complaint alleges that the individual defendants engaged in a pattern of acts designed to destroy Federal Beef. Among these actions were alleged disparaging remarks made to Federal Beef employees in an attempt to induce those employees to leave Federal Beef, and the alleged bribery of at least one Federal Beef employee to induce him to sell Central Beef products to Federal Beef's customers. The Complaint also alleges that, before he left the company, Marshall Chernin wanted to buy a portion of GFI's business and attempted to drive down the price of the company by making poor business decisions in violation of his fiduciary duty to the company.

Defendants have now moved to dismiss most of the Complaint. In the alternative, Adam Chernin, Central Beef, and James Mitchell seek a more definite statement of the claims against them. Finally, James Mitchell alleges that this Court lacks personal jurisdiction over him.

**DISCUSSION**

**A. Personal Jurisdiction**

Once a defendant has challenged a federal court's in personam jurisdiction, the plaintiff bears the burden of presenting a prima facie case that such jurisdiction exists. Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp. 2d 990, 995 (D. Minn. 1998). Where personal jurisdiction is challenged at the pretrial stage, as here, all evidence must be viewed in the light most favorable to the plaintiff and all factual disputes must be resolved in the plaintiff's favor. Id. Doubts as to whether a court has personal jurisdiction over an individual or entity should

be resolved in favor of retaining jurisdiction. Hunter-Keith, Inc. v. Gen. Elec. Credit Corp., Civ. No. 4-84-804, 1987 WL 8592, at * 4 (D. Minn. 1987).

The general test for deciding whether a federal court may exercise personal jurisdiction over a civil defendant is well known. First, the court must determine whether the forum state's long-arm statute subjects the defendant to jurisdiction. Second, the exercise of jurisdiction must comport with the due process requirements of the Fifth Amendment. Where the relevant state long-arm statute extends as far as due process allows, as does Minnesota's, the two inquiries are codeterminate. See Minn. Stat. § 543.19; Dotmar, Inc. v. Niagra Fire Ins. Co., 533 N.W.2d 25, 29 (Minn. 1995) (describing reach of Minnesota's long-arm statute). In order to satisfy due process, a defendant must have "minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The defendant's "contacts" with the forum state generally must not arise due to mere fortuity, but must arise because of the defendant's "purposeful availment" of the privilege of conducting activities in the state. See Hanson v. Denkla, 357 U.S. 235, 253 (1958); Digi-Tel Holdings, Inc. v. ProTeq Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996).

1. General Jurisdiction

General personal jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that it may be sued in the forum over any

controversy, whether or not the cause of action has any relationship to the defendant's activities within the State. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). This standard is met for citizens of the forum state; for others, the standard is usually exacting and difficult to meet. See Nichols v. G. D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993) (noting that general jurisdiction is falling into growing disfavor as the doctrine of specific jurisdiction broadens).

In this case, Plaintiffs allege that Mitchell is subject to the general jurisdiction of this Court. Plaintiffs claim that Mitchell was in daily telephone contact with Federal Beef's headquarters in Minnesota and that he was covered by Federal Beef insurance policies issued in Minnesota. These contacts, however, are not sufficient for the exercise of general jurisdiction over Mitchell. Mitchell's contacts with Minnesota are simply not the type of "continuous or systematic" contacts necessary for general jurisdiction.

2. Specific Jurisdiction

The exercise of personal jurisdiction may be appropriate even in the absence of general jurisdiction if the Court has specific jurisdiction over Mitchell. If Mitchell has purposely directed activities at residents of the forum and the litigation results from "alleged injuries that 'arise out of or relate to' those activities," a finding of specific jurisdiction is appropriate. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (citing Helicopteros, 466 U.S. at 414).

Plaintiffs here have alleged that Mitchell, along with Marshall and Adam Chernin, bribed a Federal Beef employee in order to cause injury to Federal Beef. Thus, according to Plaintiffs, Mitchell purposely directed activities at Federal Beef, a resident of Minnesota. Mitchell's actions allegedly caused injury to Federal Beef in Minnesota. This litigation arises directly from Mitchell's alleged actions, and thus the Court has specific personal jurisdiction over Mitchell.

**B. Dismissal for Failure to State a Claim**

Defendants argue that Counts One, Two, and Five of the Complaint must be dismissed for failure to state a claim on which relief can be granted. Defendants also contend that Count Four should be dismissed as duplicative of Count Three.

For the purposes of the Motion to Dismiss, the Court takes all facts alleged in Plaintiffs' Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiffs. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

1. Count One – Commercial Bribery/Unfair Competition.

Defendants contend that there is no private cause of action for commercial bribery in Minnesota. Plaintiffs respond that, even if there is no cause of action for commercial bribery,

the Complaint sufficiently states a cause of action for unfair competition, which is a recognized tort in Minnesota.

As Defendants point out, unfair competition is not a tort with specific elements. Zimmerman Group, Inc. v. Fairmont Foods of Minnesota, Inc., 882 F. Supp. 892, 895 (D. Minn. 1994) (Davis, J.). It is, instead, a "general category of torts" such as product disparagement and improper use of trade secrets. Id. Thus, to state a claim for unfair competition, Plaintiffs must identify the tort underlying the unfair competition claim. Id.

Here, Plaintiffs have identified commercial bribery as the tort underlying their unfair competition claim. (Pls.' Opp'n Mem. at 13.) However, Plaintiffs offer no opposition to Defendants' assertion that there is no cause of action for commercial bribery in Minnesota. Thus, commercial bribery cannot form the basis for an allegation of unfair competition and Plaintiff's claim of unfair competition must be dismissed.

2. Count Two – Interference with Employment Relationships

Defendants assert that Plaintiffs have failed to allege the essential elements of this claim. See Kallok v. Medtronic, Inc., 573 N.W.2d 356, 362 (Minn. 1998) (setting forth elements of tortious interference with contractual relations). According to Defendants, Plaintiffs have not alleged that the employees who were allegedly interfered with had employment contracts, nor have they alleged that Defendants knew of these contracts and intentionally procured the breach of those contracts.

Defendants' allegations on this point are without merit. As an initial matter, the tort claimed by Plaintiffs does not require the existence of an employment contract. Thus, whether the Complaint alleges the existence of such contract or Defendants' knowledge thereof is of no moment. Further, although the Complaint is certainly not the most artfully drafted document, it does contend that Defendants encouraged and induced Plaintiffs' employees to terminate their relationships with Plaintiffs. (Compl. ¶ 4.) Thus, under the deferential standard noted above, Plaintiffs have sufficiently alleged a cause of action for tortious interference with employment relations.

3. Counts Three and Four – Interference with Business Relationships and Theft of Business Opportunity

Defendants ask the Court to dismiss Count Four of the Complaint as duplicative of Count Three. As support for this request, Defendants cite the Court to a single case: Kramer v. St. Louis Regional Health Care Corporation, 758 F. Supp. 1317 (E.D. Mo. 1991). Kramer, however, is not on point. In that case, the plaintiff alleged disability employment discrimination in violation of state and federal law and also alleged a common-law cause of action for wrongful termination. The court found that the discrimination statutes essentially preempted the plaintiff's wrongful termination claim, and dismissed that count. Id. at 1318-19. In this case, Plaintiffs have not raised a common-law claim that merely restates the allegations of a statutory claim. While it may be true that Counts Three and Four are

duplicative, that determination should be made after the parties have had the opportunity to explore the allegations in the Complaint through discovery.

4. Count Five – RICO

Defendants contend that Plaintiffs' RICO claim is deficient in two respects. First, according to Defendants, Plaintiffs have failed to plead the predicate acts of mail and wire fraud with the particularity required by Fed. R. Civ. P. 9(b). Second, Defendants assert that the pattern alleged is insufficient to support a RICO claim.

a. Fraud claims

Defendants assert that portions of Plaintiffs' RICO claim must be dismissed because Plaintiffs have failed to meet Rule 9(b)'s requirement of pleading fraud with particularity. Plaintiffs base their RICO count on Defendants' alleged predicate acts of bribery and mail and wire fraud. Defendants do not contend that bribery is not a sufficient predicate act, but only that Plaintiffs' fraud allegations are so vague and ambiguous as to violate Rule 9(b). Plaintiffs respond that the Court should view Plaintiffs' allegations in light of the requirements of Rule 8(a), which requires only a short and plain statement of claims. Further, Plaintiffs contend that the mail and wire fraud allegations in the Complaint are sufficient to put Defendants on notice of the claims against them.

It is undisputed that the requirements of 9(b) apply to allegations of mail or wire fraud when used as predicate acts for RICO claims. Murr Plumbing, Inc. v. Scherer Bros. Fin.

Servs. Co., 48 F.3d 1066, 1069 (8th Cir. 1995). Here, the Complaint alleges the predicate acts of mail and wire fraud in a single paragraph:

> Beginning in or about 1999, and continuing through the end of 2000, individual defendants paid substantial sums of money to at least one, and perhaps more, of plaintiffs' employees to sell defendant Central Beef's products to plaintiffs' customers. From time to time, the individual defendants used United States mail and telephone wires to communicate with plaintiffs' employees in furtherance of their scheme.

Compl. ¶ 21. These allegations do not satisfy Rule 9(b). These allegations do not sufficiently identify the acts that allegedly constituted the mail and wire fraud, when these acts were committed, by which Defendant(s) the acts were committed, and who was allegedly bribed. Reynolds v. Condon, 908 F. Supp. 1494, 1513 (N.D. Iowa 1995). The mail and wire fraud portion of Plaintiffs' RICO claim must be dismissed.

b. Pattern

Defendants argue that RICO requires an allegation of a pattern that covers a substantial period of time. According to Defendants, the twelve- to eighteen-month period alleged in the Complaint is not substantial enough.

The Eighth Circuit has declined to determine what period of time is necessary to support the "pattern" element of a RICO claim. Terry A. Lambert Plumbing, Inc. v. Western Security Bank, 934 F.2d 976, 980 (8th Cir. 1991). Defendants point to cases finding a ten- or eleven-month period insubstantial. Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1215 (8th Cir. 1993). However, the Eighth Circuit has also found that

a seven-month period may be sufficient. United States v. Nabors, 45 F.3d 238, 241 (8th Cir. 1995). In this case, the Court cannot conclude as a matter of law that an allegation of predicate acts spanning twelve to eighteen months is too insubstantial to support a RICO claim. See Reynolds, 908 F. Supp. at 1516.

The RICO allegations are fatally deficient in another respect, however. The Court has determined that Plaintiffs' RICO claims may be based only on the allegations of bribery. The alleged bribery does not by itself constitute the sort of pattern required to maintain a RICO claim. To allege a sufficient pattern to support a RICO claim, Plaintiffs must allege two or more predicate acts taken in furtherance of the alleged RICO conspiracy. 18 U.S.C. § 1961(5). The Complaint alleges that Defendants induced Garland Carter, an employee of GFI and Federal Beef, to sell Central Beef's products to at least three of Federal Beef's customers "over an extended period of time." (Compl. ¶ 23.) It is unclear whether the inducement alleged was a single act of bribery, or several acts of bribery. Reading the Complaint liberally, the Court will assume that the Complaint alleges several acts of bribery.

However, merely pleading two or more acts is not by itself sufficient to support a RICO claim. Wisdom v. First Midwest Bank, 167 F.3d 402, 406 (8th Cir. 1999). "[T]he predicate acts must be related and must 'amount to or pose a threat of continued criminal activity.'" Id. (quoting United HealthCare Corp. v. American Trade Ins. Co., 88 F.3d 563, 571 (8th Cir.1996)). There is no allegation in the Complaint that the alleged bribery posed a serious threat of continued criminal activity.

This Complaint is an example of the use of RICO, a statute enacted to assist in battling organized crime, for a purpose Congress certainly never intended. See Reynolds, 908 F. Supp. at 1507 (citing RICO legislative history). RICO is not a surrogate for an injured party's tort claims. See Handeen v. Lemaire, 112 F.3d 1339, 1348 (8th Cir. 1997) (stating that "RICO is not a surrogate for professional malpractice actions"). RICO and its treble damages and attorney's fees provisions are powerful weapons that should not be used in cases such as the instant case. Here, the basis of the Complaint is breach of fiduciary duty and accompanying torts. Defendants should be allowed to defend against Plaintiffs' tort claims without also being forced to defend against those claims shrouded in RICO allegations. Plaintiffs' RICO claim will be dismissed.

**C. More Definite Statement**

Adam Chernin, James Mitchell, and Central Beef contend that, if the Motion to Dismiss is denied, Plaintiffs should be required to replead under Fed. R. Civ. P. 12(e). Rule 12(e) provides that a party may move for a more definite statement when a pleading is "so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading." Defendants complain that they cannot determine what acts Plaintiffs allege they committed, and so cannot respond to the Complaint.

As noted above, the Complaint is not artfully drafted. However, it is not "so vague and ambiguous" that Defendants cannot respond to it. Defendants' Motion on this point is denied.

**CONCLUSION**

Accordingly, based upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions to Dismiss (Clerk Doc. Nos. 22 and 29) are **GRANTED IN PART and DENIED IN PART**, and Counts One and Five of the Complaint are **DISMISSED WITH PREJUDICE**;
2. Defendant James Mitchell's Motion to Dismiss for lack of personal jurisdiction (Clerk Doc. No. 32) is **DENIED**; and
3. The Motions for a More Definite Statement by Defendants Adam Chernin, James Mitchell, and Central Beef (Clerk Doc Nos. 29 and 32) are **DENIED**.

Dated: September 19, 2001

Paul A. Magnuson
United States District Court Judge